1376

ELIZABETH P. McCABE AND JAMES P. QUIGLEY, EXECUTORS OF THE LAST WILL AND TESTAMENT OF THOMAS McCABE, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 43287.   Promulgated August 28, 1931.

*Earl C. Vedder, Esq.*, for the petitioners.
*J. A. Cox, Esq.*, for the respondent.

OPINION.

Love: In this case the Commissioner asserted a deficiency for 1924 based on his determination that McCabe realized a taxable gain in the acquisition by him of the assets of the Neely Lumber Company in the amount of $32,874.25. The petitioners assert that McCabe realized no profit whatever with respect to his dealings in the Neely Lumber Company, but suffered a serious loss.

For the year 1925, the Commissioner asserted a deficiency based on a determination that McCabe constructively received, in 1925, bonuses in the amount of $66,326.59. Petitioners assert that McCabe never at any time actually received such bonuses, and that they were never taxable income to him.

The record is very unsatisfactory. No books were submitted except a ledger of the Neely Lumber Company, which apparently dis-

closed but few items pertinent to the issues involved in this case, and several pages taken from the " Combined Journal, Cash Book and Daily Financial Statement " of the Salamanca Furniture Works and the Salamanca Panel Company, respectively. Nearly all the evidence was oral, and from memory of the witnesses. While the witnesses were stockholders and officers in the several companies involved, they were testifying with reference to another person's business transactions that occurred eight or ten years ago. In several instances, as will be pointed out later, their testimony is either in conflict with the book records which are in evidence, or is not corroborated by such evidence.

With reference to the Neely Lumber Company transactions involving the deficiency for 1924, we may point out that the Commissioner determined that McCabe realized a taxable gain in 1924 by taking over the assets of that company. That determination constitutes a prima facie case in favor of the respondent in this proceeding. It, therefore, devolves upon petitioners to overthrow that prima facie case by establishing, by competent evidence, that the Commissioner erred in whole or in part in that determination.

It was fairly well established and we have found as a fact that McCabe endorsed notes of the Neely Lumber Company to the extent of thirty or forty thousand dollars and that he gave Neely a letter of credit which rendered him liable on several debts incurred by Neely. The proof also shows that McCabe was sued on a number of claims against the Neely Lumber Company, and that he settled those claims, some at forty cents on the dollar, and some at fifty cents on the dollar. It is also established that McCabe took over the Neely Lumber Company in 1924, dismissed Neely from its management and substituted Haralson. The witness testified that in the liquidation of the Neely Lumber Company, McCabe collected and got about $3,000, but not exceeding $3,500. The ledger pages of the Neely Lumber Company that are in evidence disclose the fact that Haralson, after May, 1924, collected on notes and accounts receivable an aggregate of $14,597.43. The discrepancy here pointed out serves to illustrate the unreliable character of the oral testimony. Not that the witnesses intentionally misrepresented the facts, but rather in the very nature of things, they did not know or did not remember the facts. Other similar discrepancies might be pointed out. The result is that we can not determine from the record how much McCabe did receive as a result of the liquidation of the Neely Lumber Company. We may not act and decide issues of fact on surmises and guesses. We must have reliable and fairly definite evidence.

In his return for 1924, McCabe claimed a loss of $18,500, based on bad debts involving the Neely Lumber Company, but reported no income from that source. Upon audit, the Commissioner enlarged the allowance for bad debts to $25,000, but added to income, $32,-874.25. Upon the evidence in the record, we can not hold that the Commissioner erred and, hence, we approve his action on the deficiency asserted for 1924.

On January 31, 1921, there was credited to McCabe, on the books of the Salamanca Furniture Works, 2 per cent of its net earnings, $25,639.23, as a bonus. The same company credited to McCabe on January 6, 1923, a sum equal to 20 per cent of its sales in 1922, $18,355.18, as a bonus. That makes a total in bonuses credited to McCabe by the Salamanca Furniture Works of $43,994.41.

There was credited on the books of the Salamanca Panel Company to McCabe as bonuses, on December 31, 1920, 20 per cent of net earnings, $12,871.87, and on March 6, 1923, 2 per cent on sales, $7,523.02, making a total of $20,394.89. This makes a grand total of bonuses credited of $64,389.30.

The Commissioner charged to McCabe " Bonuses constructively received in 1925, $66,326.59." There were included in the capital account of the Thomas McCabe Industries, McCabe bonuses to the amount of $43,994.41, which is the exact amount of the two bonus items credited by the Salamanca Furniture Works. What became of the two items credited by the Salamanca Panel Company is not disclosed by the record. So far as the evidence discloses, either oral or documentary, those credits remained on the books at the date of the merger in 1925.

It appears, therefore, that McCabe never was paid in cash any of those bonuses. The $43,994.41 that was carried into the capital account of the Thomas McCabe Industries was apportioned among its stockholders, and in that way McCabe got about 60 per cent of it. There is no evidence in the record as to what the market value of that stock was. Those bonuses were credited to McCabe in 1921 and 1923, respectively.

There is no evidence in the record that shows that the several corporations had the cash at the time or times when the bonuses were credited on their books to McCabe to pay a draft drawn on such credits. Neither is there evidence to show that the corporations had the cash available at any time prior to 1925.

Those credits still remained on the books at the beginning of 1925. The Commissioner has determined that McCabe received them in 1925. We find no evidence in the record justifying us to hold that the Commissioner erred.

It is true that there was testimony to indicate that McCabe authorized the crediting, into the capital account of the corporation organ-

ized in 1925, of the two bonus credits on the books of the Salamanca Furniture Works (at least the amount so credited to the capital account equaled those two bonus credits), but we are unable to determine what became of the two bonus credits on the books of the Salamanca Panel Company.

McCabe received a large part of the stock of the new corporation, the value of which at date of its receipt is not disclosed.

The Commissioner charged McCabe with constructive receipt of $66,326.59. We think the evidence clearly shows that the aggregate of the four bonus items credited to McCabe was $64,389.30, and no more, hence, the amount should be changed from $66,326.59 to $64,389.30, and with that correction we approve the determination of the Commissioner on that issue.

*Judgment will be entered under Rule 50.*